**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Iris Negron,** ) | **CASE NO. 1:09 CV 691** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **Commissioner of Social Security,** ) | **Memorandum of Opinion andOrder** |
| ) | |
| **Defendant.** ) | |

## INTRODUCTION

This matter is before the Court upon the Report and Recommended Decision ("R&R") of Magistrate Judge David S. Perelman (Doc. 18) recommending reversal of the Commissioner's decision and an award of benefits. For the reasons that follow, the R&R is REJECTED and the decision of the Commissioner is AFFIRMED.

## FACTS

Plaintiff appeals the Commissioner's denial of her application for disability insurance benefits and supplemental security income benefits. According to plaintiff, the administrative law judge ("ALJ") failed to accord controlling weight to the opinion of her treating physicians.

1

Plaintiff also argues that the ALJ erred by finding plaintiff's testimony to be not credible and failing to evaluate plaintiff's complaints of pain as a disabling condition.

The ALJ concluded that plaintiff suffers from the severe impairments of fibromyalgia, depressive disorder, and generalized anxiety disorder.  He concluded, however, that none of these impairments, either alone or in combination, meet or medically equal a listed impairment.  The relevant medical evidence[1] is as follows,

Throughout the 1990s, plaintiff was seen by the Neighborhood Family Practice for back pain.  On March 13, 2002, plaintiff was seen for headaches, back pain, knee pain, dizziness, and difficulty breathing.  Soon thereafter, plaintiff returned, complaining of severe headaches and numbness in the back of her head.  She was referred to physical therapy for lumbosacral strain and knee pain.  The physical therapist reported that plaintiff showed minimal improvement.  Thereafter, she was provided a TENS unit, which is an electrical device used to block pain signals.  On September 26, 2002, plaintiff was refered to Dr. Zein, a rheumatologist.  She was diagnosed with firbomyalgia, and treated with Trazodone, topical Ketoprofen, and Bupivacaine.  On June 1, 2006, Dr. Zein noted that plaintiff had "no limitations."  (TR 374).

In October of 2004, plaintiff began seeing Dr. Sonia Tanio.  Dr. Tanio is plaintiff's treating physician.  Dr. Tanio noted that plaintiff complained of muscle aches all over her body.  She noted that plaintiff's gait was normal and that she did not require an ambulatory aid.  She further noted that plaintiff's prognosis was fair and that her symptoms were "controlled with treatment."  (TR 240).  Specifically, Dr. Tanio indicated that plaintiff was prescribed a TENS

---

[1] Plaintiff does not allege any error in connection with the ALJ's analysis of plaintiff's psychological symptoms.  Accordingly, the Court will focus its discussion on the fibromyalgia diagnosis.

unit and that she had a "good response." (TR 239). Thereafter, on February 17, 2005, Dr. Tanio completed a residual functional capacity assessment, in which she indicated that plaintiff could lift no more than five pounds, could stand or walk for only 30 minutes at a time during a one hour stretch, and could sit for only 30 minutes. Dr. Tanio further noted restrictions in plaintiff's ability to, among others, climb, balance, stoop, reach, and push/pull. (TR 255-56).

In his opinion, the ALJ rejected the opinion of Dr. Tanio, plaintiff's treating physician. The ALJ noted as follows,

> Despite noting that [plaintiff's] symptoms are well-controlled with medication, Dr. Tanio reported that she could not perform more than a limited range of work at the sedentary level of exertion. Specifically, she states that [plaintiff] could only lift/carry less than 5 pounds, stand/walk 30 minutes at a time for up to one hour, and sit for a total of 30 minutes. Obviously, that statement is not consistent with Dr. Tanio's own assessment of [plaintiff's] medical condition; indeed, if she were this limited in her physical capacity, her symptoms are not, as Dr. Tanio notes, 'well-controlled on medication.' Consequently, I cannot afford controlling or even some weight to this medical opinion, even though it comes from a treating source.

(TR 23)

Drs. Walter Holbrook and Teresita Cruz, state agency physicians, reviewed plaintiff's medical records and assessed her physical functioning. Both doctors concluded that plaintiff was capable of light exertional activities with no postural limits.

At the hearing before the ALJ, plaintiff testified that, although she occasionally grocery shops, someone must always accompany her. She further testified that pain prevents her from doing things "most of the time." The ALJ concluded that plaintiff was not entirely credible. The ALJ noted that the record is "replete with statements from the claimant that she takes her daughter to and from school; but, during her testimony she stated that her husband does it." (See, R 25, 182, 351, 507) The ALJ further discounted plaintiff's credibility because, although

3

she testified that she suffered from pain "most of the time," she indicated in her "function report" that she frequently goes to family members' homes and appointments.

In addition to plaintiff, Dr. Robert Newman, a medical expert, testified before the ALJ. Dr. Newman testified that plaintiff's impairments do not meet or medically equal a listed impairment. Dr. Newman testified that plaintiff could lift or carry 20 pounds. Dr. Newman did, however, question whether plaintiff would consistently be able to work an eight hour workday. The testimony is as follows,

> Q: Okay. So, are you telling me that just looking at the objective evidence then, that there is a question as to whether or not she would be able to work a full eight hour workday?
>
> A: Yes.
>
> Q: And would that depend basically on her symptoms?
>
> A: Yes, sir.
>
> Q: Okay. So, Doctor, just to be clear, I didn't hear you opine that she's unable to work eight hours.
>
> A: No, I did not say that. I said that, what I mean to say she's able to work an eight hours but there are many qualifications as to how well she's going to be able to do it. Whether it's six hours or eight hours, I can't really say.
>
> ALJ: Okay. Thank you. Counsel, I'm interpreting the doctor's opinion as being, this case really depends on the credibility of your client with regard to her symptoms. That's how I'm viewing it. I'm not hearing an objective opinion from the doctor that based on the--

4

> ATTY: One way or the other.
>
> ALJ: –objective evidence in the, in the record that that alone would, would show that your client is unable to sustain an eight hour work day.  I think we're really looking at the credibility of your client now regarding her, her symptoms.
>
> \*\*\*
>
> Q: ...Do you accept the appropriateness of, of this condition that she does in fact suffer from fibromyalgia given the evaluations?
>
> A: Yes, I think she does.
>
> A: ...I'm pretty sure she can work an eight hour day but there are going to be lots of times when there's going to be absences or times when she can't do it.
>
> Q: Okay.
>
> A: So most of the time she's going to be able to work an eight hour day.
>
> Q: So it's going, it's going to vary to some extent?
>
> A: It's going to vary and I can't give you an exact frequency.
>
> Q: ...Is it reasonable to conclude that [fibromyalgia] would result in her being absent two days a month?
>
> A: Two days a month, yes, I would think so.[2]

The ALJ interpreted Dr. Newman's testimony to mean that fibromyalgia could result in a claimant requiring absences of two or more days a month, depending on the symptoms.  The ALJ indicated that assessing the nature and extent of the symptoms related to fibromyalgia depend in

---

[2] The vocational expert testified that an individual who was expected to be consistently absent two or more days per month would not be employable.

large part on the credibility of the claimant.  Because the ALJ found plaintiff less than credible, he concluded that Dr. Newman's comments regarding potential absences resulting from fibromyalgia do not apply in plaintiff's case.

Upon review, the ALJ concluded that plaintiff was not disabled and he, therefore, denied her claim for benefits.  Plaintiff appealed to this Court.  The Magistrate Judge recommends that this Court reverse the ALJ's determination and award benefits.  According to the Magistrate Judge, the ALJ violated the treating physician rule by substituting his own medical judgment for that of Dr. Tonia.  In addition, the Magistrate Judge concludes that Dr. Newman's testimony requires a finding of disability.  The government objects to the Magistrate Judge's findings.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 72, which governs the matter herein inasmuch as timely objections have been made to the Report and Recommendation, provides in part:

> **(b) Dispositive Motions and Prisoner Petitions.**
>
> ...The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

As stated in the Advisory Committee Notes, "The term 'de novo' signifies the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required." citing *United States v. Raddatz*, 447 U.S. 667 (1980).

**ANALYSIS**

The government objects to the Magistrate Judge's findings on two grounds.  Each will be

addressed in turn.

    1.        Treating physician rule

The government objects to the Magistrate Judge's recommendation that the ALJ violated the treating physician rule in rejecting the opinion of Dr. Tonia. According to the government, the ALJ properly considered the opinion and gave adequate reasons for rejecting it.

The treating physician rule requires the ALJ to articulate a basis for rejecting the opinions provided by plaintiff's treating physician. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Although a treating physician's opinion is generally entitled to substantial deference, the ALJ is not bound by that opinion. *Id*. citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). "The treating physician's opinion must be supported by sufficient medical data." *Jones*, 336 F.3d at 477 (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985)). Where the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion provided he sets forth a *reasoned basis* for the rejection. *Id*. (Emphasis added).

Upon review, the Court agrees with the government that the ALJ did not commit error when he evaluated the opinion of Dr. Tonia. Dr. Tonia opined that plaintiff could only perform a limited range of work at the sedentary level. Yet, at the same time, Dr. Tonia indicated that plaintiff's prognosis was "fair" and that her symptoms were "controlled with treatment." The Court finds that the ALJ reasonably rejected Dr. Tonia's opinion on the grounds that it is internally inconsistent. It defies logic to conclude that symptoms are "controlled with treatment" if an individual is unable to stand or walk for more than 30 minutes at a time during a one hour stretch, and can sit for only 30 minutes. The Court finds that the ALJ set forth a reasoned basis

for rejecting the opinion of Dr. Tonia.

The Magistrate Judge concludes that the ALJ erred because he credited Dr. Tonia as having opined that plaintiff's symptoms were "well-controlled with medication," when in fact Dr. Tonia opined that plaintiff's symptoms were "controlled with treatment." According to the Magistrate Judge, there is a "world of difference" between the these two statements. This Court disagrees. The thrust of Dr. Tonia's statement is that treatment results in the control of plaintiff's symptoms. According to Dr. Tonia, plaintiff's symptoms include "back pain, muscular pain, aches all over the body, especially extremities." Dr. Tonia, in turn, opined that plaintiff's "symptoms" are "controlled with treatment," and that she had a "good" response to the TENS unit. (TR 239). Although there may be a slight difference between "well-controlled" and "controlled," her conclusion unmistakably indicates that plaintiff has a positive response to treatment. If one were to accept that plaintiff suffers from the restrictions imposed by Dr. Tonia, it would be logically inconsistent to describe plaintiff's symptoms as "controlled." If plaintiff's symptoms caused the severe restrictions imposed by Dr. Tonia, the plaintiff's symptoms could only be described as uncontrolled. Accordingly, the Court finds that the ALJ properly rejected the opinion of Dr. Tonia as the restrictions she imposed are inconsistent with her other findings. The ALJ gave a reasoned and detailed rejection of the opinion and, as such, he did not violate the treating physician rule.

2. Plaintiff's credibility

The government objects to the Magistrate Judge's assessment of plaintiff's credibility, as well as his characterization of Dr. Newman's testimony. According to the government, the ALJ properly discounted plaintiff's credibility because her hearing testimony is inconsistent with her

own prior statements. In addition, the government argues that the ALJ properly concluded that Dr. Newman's testimony regarding plaintiff's ability to work an eight hour day was necessarily based on plaintiff's credibility.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). In a case such as this, the evaluation of a claimant's credibility is especially important given the nature of fibromyalgia. *Id.* The ALJ is not "free to make credibility determinations based solely upon an 'intangible or intuitive notion about the individual's credibility.'" *Id. quoting,* Soc. Sec. Rul. 96-7p. Credibility determinations must find support in the record. "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by treating physicians and others, as well as any other relevant evidence contained in the record." Rogers, 486 F.3d at 247. The Regulations require that the ALJ provide the weight he gave to the claimant's statements and the reasons supporting the weight. Soc. Sec. Rul. 96-7p. At the end of the day, however, the ALJ is in the best position to evaluate the credibility of the claimant, and it is not this Court's function to substitute its own judgment for that of the ALJ.

In this case, the Magistrate Judge concluded that the ALJ improperly analyzed plaintiff's credibility. According to the Magistrate Judge, the ALJ improperly discounted plaintiff's credibility based on the fact that plaintiff had not sought treatment for fibromyalgia since 2006. The Magistrate Judge points out that plaintiff explained that she was unable to pay for treatment. The record reveals, however, that plaintiff had sought emergency room treatment for both serious and *benign* conditions after 2006, yet did not seek treatment for fibromyalgia. Moreover,

9

the ALJ pointed out several places in the record where plaintiff's hearing testimony regarding her ability to engage in daily activities directly conflicted with prior statements she herself made. The ALJ's reasoned basis for discrediting plaintiff's complaints of pain cannot be ignored.

In addition, the Magistrate Judge concludes that the ALJ's assessment of plaintiff's credibility is undermined by the testimony of Dr. Newman, who averred that plaintiff's pain symptoms are consistent with fibromyalgia.  While relying on this testimony, the Magistrate Judge also criticizes[3] Dr. Newman for testifying to the exact opposite, *i.e,* that plaintiff's pain symptoms are not in fact consistent with fibromyalgia.  The Magistrate Judge accepted Dr. Newman's conclusion that the complaints were consistent with fibromyalgia and rejected Dr. Newman's conclusion that the pain complaints were not reasonable.  In all, the Court cannot say that Dr. Newman's testimony is at odds with the ALJ's conclusion that plaintiff is not entirely credible.

The ALJ further explained that he understood Dr. Newman's testimony regarding the potential inability to work an eight hour day to be dependent on the plaintiff's credibility.  This conclusion and analysis of the testimony is supported by the record evidence.  As an initial matter, the ALJ and Dr. Newman concluded that plaintiff suffers from fibromyalgia.  The ALJ indicated at the hearing that he understood Dr. Newman's testimony to mean that her ability to maintain an eight hour workday depends on her credibility.  The ALJ noted that Dr. Newman

---

[3] The Magistrate Judge notes in fn 6 that, "This Court has a very difficult time reconciling the doctor's 'Yes' response to counsel's question whether the plaintiff's testimony was consistent with medical literature regarding fibromyalgia with his statement almost immediately thereafter that the plaintiff's pain complaints were not reasonable based on fibromyalgia."

was not basing his opinion on objective medical findings. Given the nature of fibromyalgia, it was reasonable for the ALJ to conclude that the ability to maintain an eight hour workday would depend on the severity of the symptoms, which in turn depends on the credibility of the claimant. Moreover, as set forth above, Dr. Newman testified that plaintiff's complaints of pain were not reasonable. Thus, in essence, the ALJ concluded that, while fibromyalgia may result in the absence of work for two or more days per month, in this case, plaintiff's pain complaints do not rise to that level. Accordingly, the Court finds that the Magistrate Judge erred in concluding that the ALJ failed to properly assess plaintiff's credibility.

### **CONCLUSION**

For the foregoing reasons, the Court REJECTS the R&R and affirms the decision of the Commissioner.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/30/10